# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | | |
|---|---|---|
| COREEN RENEE NOBLE and ROBERT NOBLE, | ) ) ) | |
| Plaintiffs, | ) ) | 1:07-cv-00004 JWS |
| vs. | ) ) | ORDER AND OPINION |
| UNITED STATES OF AMERICA, | ) ) | [Re: Motion at docket 70] |
| Defendant. | ) ) | |

## I. MOTION PRESENTED

At docket 70 plaintiffs Coreen Renee Noble ("Coreen") and her husband Robert Noble (collectively "Nobles") ask the court to apply the presumption created in *Sweet v. Sisters of Providence*[1] to three affirmative defenses pled by defendant United States. The United States' response is at docket 80, and plaintiffs reply at docket 85. Oral argument was not requested, and it would not be of material assistance to the court.

## II. BACKGROUND

Coreen is an Alaska Native for whom medical care is provided by the United States. The Nobles lived in Kake, Alaska, a small and relatively remote village in

---

[1] 895 P.2d 484 (Alaska 1995).

Southeast Alaska.  In January of 2004, Coreen was diagnosed with a severe form of Stevens-Johnson Syndrome ("SJS"), a potentially fatal disease.  SJS may cause severe damage to the skin and membranes in the eyes, mouth, and digestive tract.  Coreen was sent to Harborview Medical Center in Seattle where she received the specialty care required for her SJS.

In March of 2004, Coreen returned to Kake.  Thereafter, she received medical care for her eyes in Kake, Sitka, and Anchorage.  Ultimately, her left eye deteriorated to the point that it was removed on April 5, 2005.  In 2006, the Nobles filed an administrative claim seeking redress for allegedly negligent medical care provided to Coreen after she returned to Kake.  In 2007, the Nobles filed this Federal Tort Claims Act lawsuit against the United States.  Coreen seeks compensatory damages for injuries allegedly caused by the medical malpractice of health care providers for whom the United States is responsible.  Her husband seeks damages for loss of consortium.

### III.  DISCUSSION

In *Sweet* the Alaska Supreme Court held that when a medical malpractice plaintiff's ability to prove her negligence claim has been impaired by a defendant's breach of a duty to create or maintain adequate records, the trial court should shift the burden of proof to the defendant such that the defendant must prove that it was not negligent.[2]  The effect of shifting the burden of proof creates a rebuttable presumption that the defendant was negligent.  The burden shifting may only be used where a plaintiff (1) proves that her ability to establish a *prima facie* case of negligence has been

---

[2] *Id.* at 492.

impaired by the lack of records, and (2) she also proves that lack of records resulted from defendant's negligence or other fault.[2]  The *Sweet* presumption may be applied to the United States in a medical malpractice action under the Federal Tort Claims Act.[3]

The Nobles ask the court to apply the *Sweet* presumption to "three affirmative defenses" which may be used by the United States as follows: "1. Coreen Noble failed to follow medical advice to move out-of-state to a specialized care facility in the Lower 48; 2. Coreen Noble was referred to specialized physicians in the Lower 48; 3. Coreen Noble was noncompliant with referrals–she failed to attend scheduled appointments."[4] However, the United States has not pled such affirmative defenses in its Answer.[5]  It appears that the three "affirmative defenses" are more aptly described as "potential defense arguments," the terminology used in the United States' response to the motion.[6]

Neither party has cited a case in which the *Sweet* presumption was applied to an affirmative defense or an argument made by a defendant seeking to overcome a plaintiff's *prima facie* case.  Nor has the court found such a case.  Reflection suggests that the absence of case law in such a circumstance flows inevitably from the first requirement for invoking the presumption.  As noted above, in order to invoke the presumption, the first thing a plaintiff must do is to show that a lack of records impairs

---

[2] *Id.* at 491.

[3] *Nayokpuk v. United States*, 848 F. Supp. 2d 1030, 1035 (D. Alaska 2012).

[4] Doc. 70 at p. 1.

[5] Doc. 5.

[6] Doc. 80 at p. 1.

3

her ability to present a *prima facie* case.[7] Any defense argument, including the ones identified by plaintiffs, would come only after the Nobles have put on their case. Defense arguments presented after the close of the Nobles' case cannot logically be said to impair what the Nobles will already have accomplished. In short, the request for application of the *Sweet* presumption fails on the first prong of the test laid out in the *Sweet* decision itself.[8] Given that conclusion, the court finds it unnecessary to consider any of the other arguments advanced by the parties.

It may be that one or more of the health care providers will testify that he recommended that Coreen seek care Outside, referred her to specialists Outside, or that she did not attend scheduled appointments. If so, the remedy for the Nobles lies in cross examination. For example, if a doctor testifies that he told Coreen to move Outside where better care could be provided, he can be asked on cross-examination whether that was an important recommendation to his patient, followed by an inquiry as to where that important recommendation is found in the medical records, followed by an inquiry asking that if it was so important why is it not documented in the medical records.

## IV. CONCLUSION AND RECOMMENDATION TO COUNSEL

For the preceding reasons, the motion at docket 70 is **DENIED**.

---

[7] *Sweet*, 895 P.2d at 491.

[8] The *Sweet* presumption may also sometimes be applied as a discovery sanction. *See* discussion in *Nayokpuk*, *supra*. However, the Nobles do not point to any discovery abuse by defendant as a basis for imposing a *Sweet* presumption as a sanction.

4

The court writes further to suggest that counsel consider participating in a settlement conference. To that end, counsel shall confer with their clients and then within fourteen (14) days advise the court whether they would like a settlement judge appointed and whether any settlement conference that might be conducted should be held in Anchorage or, if possible, in Juneau. Given that the Nobles now live in Oregon, travel to Anchorage would likely be easier for plaintiffs than travel to Juneau. It would also be much more efficient for an Anchorage based judge to hold the conference in Anchorage.

DATED this 31st day of July 2013.

/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE